IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNION SPRINGS TELEPHONE COMPANY, INC., an Alabama corporation, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No.: 2:06-CV-0474-MEF<br>) |
| T-MOBILE USA, INC., a Delaware corporation doing business in Alabama; Defendants A, B, C and/or D, both singular and plural, being those persons, firms, partnerships, corporations or other entities who held an interest in, or operated, T-Mobile USA, Inc.; all whose names are unknown at this time but will be substituted by amendment when ascertained, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**PLAINTIFF'S MOTION FOR REMAND AND OPPOSITION
TO DEFENDANT'S NOTICE OF REMOVAL**

COMES NOW Plaintiff Union Springs Telephone Company, Inc. ("Union Springs"), by and through its undersigned counsel, and files its opposition to Defendant T-Mobile USA, Inc.'s ("T-Mobile") Notice of Removal and further requests that this Honorable Court grant Plaintiff's Motion for Remand to Bullock County Circuit Court for the State of Alabama, pursuant to 28 U.S.C. § 1447(c). In support of said motion, Union Springs respectfully shows unto the Court as follows:

1.    Union Springs is a local exchange telephone company serving parts of Bullock County, Alabama. In its complaint, Union Springs seeks to enforce and collect amounts due by T-Mobile under a February 24, 2006 Order of the Alabama Public Service Commission ("APSC"), requiring T-Mobile to pay Union Springs, among others,

compensation for T-Mobile traffic terminated on Union Springs' network from the "meet point billing date to April 29, 2005 based on Union Springs' APSC approved tariffs". Complaint at ¶¶ 6, 7; Order of the APSC at p. 4, *In re: Request for a Declaratory Ruling Upholding the Applicability of Tariff Provisions Governing Compensation for Indirect CMRS Traffic*, Docket 28988 (APSC Feb. 24, 2006), citing *In the Matter of Developing a Unified Intercarrier Compensation Regime; T-Mobile, et al., Petition for Declaratory Ruling Regarding Incumbent LEC Wireless Termination Tariffs;* Declaratory Ruling and Report and Order, 2005 WL 433200, 20 FCC Rcd. 4855 (Feb. 24, 2005), attached hereto as Exhibit "A".

    2.    T-Mobile did not appeal the state administrative decision within the time prescribed by statute or otherwise seek to challenge the order in state or federal court. ALA. CODE § 37-1-122 (1975 as amended) (providing that appeals from the APSC's orders must betaken within thirty (30) days from the date of said order). In its Complaint, Union Springs does not assert a federal cause of action or otherwise premise its claims on federal law.

    3.    For purposes of removal, federal question jurisdiction must be determined on face of the plaintiff's well-pleaded complaint (the "well-pleaded complaint rule"). Anticipated or inevitable federal defenses generally will not support removal based upon federal question jurisdiction. 28 U.S.C.A. §§ 1331, 1441(b). *See Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368 (11th Cir. 1998); *BLAB T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc.*, 182 F.3d 851, 854 (11th Cir. 1999), citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908). Removal jurisdiction is to be strictly construed and any doubts are to be resolved in favor of remand. *Pacheco de Perez*, 139

F.3d at 1373; *Siler v. Morgan Motor Co., et al.*, 15 F. Supp. 468, 472 (E.D. Ky. 1936), citing *Breymann v. Pennsylvania, O. & D.R. Co.*, 38 F.2d 209, 212 (6th Cir. 1930).

    4.    Union Springs' state law claims, seeking amounts owed under a final APSC Order for which no appeal was filed, are not "completely preempted" by federal law so as to invoke an exception to the well-pleaded complaint rule. *BLAB T.V.*, 182 F.3d at 854, citing *McClelland v. Gronwaldt*, 155 F.3d 507, 512 (5th Cir. 1998). The Telecommunications Act of 1996 (the "Act") has neither preempted any common law or state statutory rule, nor does the Act provide an exclusive cause of action for parties in this instance. *See City of Rome v. Verizon Communications, Inc.*, 362 F.3d 168, 176-77 (2nd Cir. 2004); *see also* 47 U.S.C. § 251(d)(3) ("In prescribing and enforcing regulations to implement the requirements of this section, the [Federal Communications] Commission shall not preclude the enforcement of any regulation, order, or policy of a State commission that--(A) establishes access and interconnection obligations of local exchange carriers; (B) is consistent with the requirements of this section; and (C) does not substantially prevent implementation of the requirements of this section and the purposes of this part.").

    5.    Further, the Act does not completely preempt state regulations, orders and requirements of state commissions when such regulations, orders and requirements do not "substantially prevent" the implementation of the Act's requirements governing Union Springs' provisioning of intrastate telephone service. *BellSouth Telecommunications, Inc. v. Cinergy Communications Company, et al.*, 297 F. Supp. 2d 946, 953 (E.D. Ky. 2003). Indeed, as stated by the APSC, "the FCC had recently upheld the right of ILECs to apply state tariffs to terminating wireless traffic for charges accruing prior to April 30,

2005." Ex. "A" at p. 4. As set out in greater detail in the accompanying brief, the FCC has specifically rejected T-Mobile's preemption argument. *In the Matter of Developing a Unified Intercarrier Compensation Regime*, 2005 WL 433200.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Union Springs Telephone Company, Inc. respectfully requests that this Honorable Court grant Plaintiff's Motion for Remand to Bullock County Circuit Court for the State of Alabama on the aforementioned grounds.

Respectfully submitted on this 26th day of June, 2006.

>  **s/Mark D. Wilkerson**
> MARK D. WILKERSON (WIL072)
> AMANDA C. CARTER (CAR116)
> DANA H. BILLINGSLEY (BIL02)
> Attorneys for Plaintiff Union Springs
> Telephone Company, Inc.
> WILKERSON & BRYAN, P.C.
> 405 South Hull Street
> Montgomery, AL 36104
> Telephone: (334) 265-1500
> Facsimile: (334) 265-0319
> E-mail: mark@wilkersonbryan.com
> E-mail: amanda@wilkersonbryan.com
> E-mail: dana@wilkersonbryan.com

OF COUNSEL:

WILKERSON & BRYAN, P.C.
405 South Hull Street
Montgomery, AL 36104
Telephone: (334) 265-1500
Facsimile: (334) 265-0319
mark@wilkersonbryan.com
amanda@wilkersonbryan.com
dana@wilkersonbryan.com

4

## CERTIFICATE OF SERVICE

  I hereby certify that I have served a copy of the foregoing on all counsel of record as listed below by placing a copy thereof in the United States mail, postage prepaid, on this the 26th day of June, 2006:

Peter S. Fruin, Esq.
Joshua D. Jones, Esq.
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue Norh
2400 AmSouth/Harvert Plaza
Birmingham, Alabama 35203-2602

                **s/Mark D. Wilkerson**
                MARK D. WILKERSON (WIL072)
                AMANDA C. CARTER (CAR116)
                DANA H. BILLINGSLEY (BIL02)
                Attorneys for Plaintiff Union Springs
                Telephone Company, Inc.
                WILKERSON & BRYAN, P.C.
                405 South Hull Street
                Montgomery, AL 36104
                Telephone: (334) 265-1500
                Facsimile: (334) 265-0319
                E-mail: mark@wilkersonbryan.com
                E-mail: amanda@wilkersonbryan.com
                E-mail: dana@wilkersonbryan.com

**EXHIBIT "A"**



# STATE OF ALABAMA
ALABAMA PUBLIC SERVICE COMMISSION
P.O. BOX 304260
MONTGOMERY, ALABAMA 36130-4260

JIM SULLIVAN, PRESIDENT
JAN COOK, ASSOCIATE COMMISSIONER
GEORGE C. WALLACE, JR., ASSOCIATE COMMISSIONER

WALTER L. THOMAS, JR.
SECRETARY

| | |
|---|---|
| **PETITION FOR DECLARATORY RULING BY ALABAMA'S RURAL INCUMBENT LOCAL EXCHANGE CARRIERS** | In re: Request for a Declaratory Ruling upholding the applicability of tariff provisions governing compensation for indirect CMRS traffic. |

**DOCKET 28988**

## ORDER GRANTING MOTION TO LIFT STAY WITH REGARD TO T-MOBILE USA, INC.

**BY THE COMMISSION:**

### I.   INTRODUCTION AND BACKGROUND

In response to the Joint Petition of numerous Alabama Rural Incumbent Local Exchange Carriers ("ILECs"),[1] the Commission established this declaratory proceeding to consider the issue of whether certain tariff provisions implemented by the petitioning ILECs could be applied to indirect commercial mobile radio service ("CMRS") traffic terminated to those ILECs in the absence of a superseding agreement governing compensation for such traffic. Said proceeding was open to all interested parties who desired to participate.

On July 31, 2003, the Commission entered an order seeking comments from interested parties regarding the enforceability of the ILEC tariff provisions in question with respect to indirect CMRS traffic. The Commission received and considered initial comments from the ILECs, BellSouth Telecommunications, Inc. ("BellSouth"); AT&T Communications of the South

---

[1] Ardmore Telephone Company, Inc.; Blountsville Telephone Company; Brindlee Mountain Telephone Company; Castleberry Telephone Company, Inc.; Farmers Telephone Cooperative, Inc.; GTC, Inc., d/b/a GT Com; Graceba Total Communications, Inc.; Hayneville Telephone Company, Inc.; Hopper Telecommunications Co., Inc.; Interstate Telephone Company; Millry Telephone Company, Inc.; Mon-Cre Telephone Cooperative, Inc.; Moundville Telephone Company, Inc.; National Telephone of Alabama, Inc.; New Hope Telephone Cooperative, Inc.; Otelco Telephone, LLC. (formerly Oneonta Telephone Company, Inc.).; Pine Belt Telephone Company, Inc.; Ragland Telephone

DOCKET 28988 - #2

Central States, LLC ("AT&T"); and a group of CMRS providers (the "CMRS Carriers").[2] Reply comments were received from the ILECs and the aforementioned CMRS carriers. Following consideration of the Initial and Reply Comments, the Commission scheduled the issues presented for oral argument on December 2, 2003.

Following the oral arguments of December 2, 2003, the Commission considered the entire record compiled and entered an Order on January 26, 2004, upholding the applicability of the ILEC tariff provisions under review to indirect CMRS traffic terminated to the ILECs (the "Declaratory Order").[3]

Prior to the effective date of the Declaratory Order, the ILECs and the participating CMRS Carriers (the "Settlement Parties") informed the Commission that they had reached a settlement wherein each participating CMRS Carrier agreed to enter into a comprehensive Traffic Termination Agreement with each participating ILEC except in those instances in which the Settlement Parties had already entered into an interconnection agreement governing such traffic. By Order dated July 30, 2004 (the "Further Order"), the Commission approved, as part of the settlement, separate proposed Traffic Termination Agreements for participating ILECs with under 15,000 access lines and those with over 15,000 access lines. At the request of the Settlement Parties, the Further Order also vacated the Declaratory Order as it applied to the participating CMRS carriers, and stayed said Order with regard to non-participating CMRS carriers. The Further Order specified:

> "Participating ILECs may seek a partial lifting of this Stay as to the application of their tariffs to the indirect intraMTA traffic of any CMRS carrier that is not a participating wireless carrier and that

---

Company, Inc.; Roanoke Telephone Company, Inc.; Union Springs Telephone Company; and Valley Telephone Company.
[2] AT&T Wireless Services, Inc.; BellSouth Mobility, LLC, d/b/a Cingular Wireless; CELCO PARTNERSHIP, d/b/a VERIZON WIRELESS; and Sprintcom, Inc.; and Sprint Spectrum, LP, d/b/a Sprint PCS.
[3] A list of the applicable tariff provisions of each ILEC were attached to the Declaratory Order as Appendix "B."

DOCKET 28988 - #3

terminates indirect intraMTA traffic to a participating ILEC or ILECs without having entered into the pertinent form of traffic termination agreement attached as Appendix "B" or "C," as the case may be, to this Order or an interconnection agreement with the affected ILEC or ILECs."[4]

Pursuant to Joint Petition filed on or about August 22, 2005, a different group of ILECs (the "petitioning ILECs")[5] requested that the Commission partially lift the Stay of its January 26, 2004 Order to affirm the application of the tariffs of the petitioning ILECs to CMRS traffic originated by T-Mobile USA, Inc. ("T-Mobile") and its affiliates which is transported to the ILECs for termination pursuant to a meet point billing agreement between T-Mobile and BellSouth. The ILECs submitting the August 22, 2005 Petition contended that T-Mobile and BellSouth had reached an agreement to move to meet point billing arrangements in 2004. As a result, the petitioning ILECs asserted that BellSouth had terminated payments to said ILECs for their role in terminating indirect IntraMTA mobile-to-land traffic from T-Mobile.

The petitioning ILECs further asserted that they were not party to the meet point billing agreement between BellSouth and T-Mobile and were not involved in the negotiations leading up to that agreement. The petitioning ILECs further noted that T-Mobile had not executed the Traffic Termination Agreements referenced in the Further Order with the ILECs nor had it otherwise remitted payments under applicable tariffs for its indirect IntraMTA mobile-to-land traffic terminated by the petitioning ILECs.

---

[4] *See* Further Order at p. 3.
[5] Ardmore Telephone Company, Inc.; Blountsville Telephone Company; Brindlee Mountain Telephone Company; Castleberry Telephone Company, Inc.; Farmers Telephone Cooperative, Inc.; GTC, Inc., d/b/a GT Com; Graceba Total Communications, Inc.; Hayneville Telephone Company, Inc.; Hopper Telecommunications Company, Inc.; Interstate Telephone Company; Millry Telephone Company, Inc.; Mon-Cre Telephone Cooperative, Inc.; Moundville Telephone Company, Inc.; National Telephone of Alabama, Inc.; New Hope Telephone Cooperative, Inc.; Otelco Telephone, LLC. (formerly Oneonta Telephone Company, Inc.); Pine Belt Telephone Company, Inc.; Ragland Telephone Company, Inc.; Roanoke Telephone Company, Inc.; Union Springs Telephone Company; Valley Telephone Company.

DOCKET 28988 - #4

The petitioning ILECs further noted that in response to a petition by T-Mobile, the FCC had recently upheld the right of ILECs to apply state tariffs to terminating wireless traffic for charges accruing prior to April 30, 2005.[6] The petitioning ILECs accordingly sought application of their respective tariff provisions governing mobile-to-land traffic to the T-Mobile indirect IntraMTA mobile-to-land traffic terminated by said ILECs from the date of T-Mobile's meet point billing conversion with BellSouth through April 29, 2005. The ILECs further reserved all rights under federal and state law regarding such traffic terminated after April 29, 2005.

On or about September 30, 2005, counsel for T-Mobile submitted a Notice of Appearance in Opposition to the ILEC Motion of August 22, 2005. Counsel for T-Mobile requested in said Motion an extension of time to allow for the preparation of a detailed opposition to the August 22, 2005 Motion of the ILECs. The Commission accordingly entered an Order Granting Extension on October 14, 2005. Said Order directed T-Mobile to submit its Response to the ILEC motion on or before October 24, 2005.

Counsel for T-Mobile did not, however, submit responsive pleadings by the established deadline of October 24, 2005. The Commission accordingly voted to approve the petitioning ILECs' Motion to Lift Stay at its November 1, 2005 meeting. Following the Commission's November 1, 2005 meeting, but prior to the entry of an order reflecting the aforementioned vote, it was brought to the attention of the Commission that counsel for T-Mobile had unsuccessfully attempted to electronically file a Brief in Opposition to the ILEC Motion to Lift Stay on October 31, 2005. Said brief was not properly filed with the Commission until November 1, 2005, however, and did not come to the attention of the Commission until after its vote of that same date on the petitioning ILECs' Motion.

---

[6] *Developing a Unified Intercarrier Compensation Regime; T-Mobile, et al, Petition for Declaratory Ruling Regarding Incumbent LEC Wireless Termination Tariffs*; Declaratory Ruling and Report and Order, 20 FCC, Rcd. 48-55 (2005)

DOCKET 28988 - #5

In a Motion to Set Aside or Reconsider Grant of ILECs' Motion to Lift Stay that was filed with the Commission on November 9, 2005, counsel for T-Mobile reported that the Commission's Order of October 14, 2005 which established the deadline of October 24, 2005 for the filing of T-Mobile's response to the ILEC Motion to Lift Stay did not reach him due to a service deficiency. Counsel for T-Mobile represented that without the benefit of that October 14, 2005 Order of the Commission, he had operated under the premise that a response would be timely if filed on or about October 31, 2005. Upon learning that the Commission had, on November 1, 2005, voted to grant the ILEC Motion to Lift Stay, counsel for T-Mobile represented that he filed the November 9, 2005 Motion to Set Aside or Reconsider on T-Mobile's behalf.[7]

In both the November 1, 2005 Brief in Opposition and the November 9, 2005 Motion to Set Aside or Reconsider, T-Mobile argued that the ILEC Petition should have been denied because the ILECs had considerably overstated the holding of the Commission's January 26, 2004 Order and mischaracterized the effect of the FCC's Order of February 24, 2005. T-Mobile asserted that the FCC order in question and the amended regulations adopted therein made clear the FCC's "preference for contractual arrangements by prohibiting ILECs from imposing compensation obligations for non-access CMRS traffic pursuant to tariff."[8] According to T-Mobile, the FCC explicitly ruled that "existing wireless termination tariffs shall no longer apply upon the effective date of the amendments" adopted.[9]

---

(the "FCC Order").
[7] T-Mobile Motion to Set Aside or Reconsider at pp. 1-2.
[8] Id. at pp. 3-4, citing FCC Order at ¶9.
[9] Id.

DOCKET 28988 - #6

T-Mobile further noted that the FCC's amended regulations clarified that an "incumbent ILEC may ... invoke the negotiation and/or arbitration procedure set forth in §252 of the Act."[10]

T-Mobile thus asserted that the aforementioned intervening actions of the FCC had prohibited the use of, or reliance on, state tariffs with respect to CMRS traffic and empowered the ILECs with the explicit legal authority to compel negotiation and/or arbitration regarding compensation for CMRS traffic.[11] T-Mobile accordingly argued that to now grant the petitioning ILECs' Motion to Lift Stay and enforce the ILEC tariffs against T-Mobile without following the negotiation and/or arbitration process required by the Telecom Act would be contrary to federal law.[12]

T-Mobile further represented that on or about October 24, 2005, the petitioning ILECs began informal discussions with T-Mobile concerning compensation for the termination of CMRS traffic. T-Mobile maintained that it had expressed its willingness during the course of those negotiations to compensate the petitioning ILECs for historical CMRS traffic and had asked the petitioning ILECs for minutes of use and other billing information necessary to settle the ILEC claims. T-Mobile asserted, however, that the petitioning ILECs inexplicably abandoned any further meaningful discussions with T-Mobile and filed the instant Motion to Lift the Stay without informing T-Mobile of the amounts they seek for historical CMRS traffic. T-Mobile nonetheless represented that it stood ready to pay the appropriate amount due each petitioning ILEC for historical CMRS traffic after an opportunity to review properly documented and validated invoices and minute of use information from said ILECs.[13]

---

[10] *Id.* at p. 4, *citing* FCC Order at ¶9 and 47 CFR §20.11(e).
[11] *Id.*
[12] *Id.*
[13] *Id.* at p. 5.

DOCKET 28988 - #7

In conclusion, T-Mobile argued that the Commission should have dismissed the ILEC Motion for Stay because it was both unnecessary and legally unfounded. In the alternative, T-Mobile argued that the Commission should have ordered the petitioning ILECs to provide T-Mobile the minute of use information and/or invoices necessary to enable T-Mobile to validate and determine what amount each respective ILEC is entitled to for historical CMRS traffic.[14]

On November 18, 2005, the petitioning ILECs submitted a response to T-Mobile's Motion to Set Aside or Reconsider. In said response, the petitioning ILECs noted that T-Mobile's in-house legal director was informed by email on August 19, 2005 that the ILECs would be filing the Motion to Lift Stay. Despite being immediately served with a copy of said Motion, the petitioning ILECS noted that T-Mobile chose not to make an initial appearance in this matter until September 29, 2005, some 38 days after the Motion to Lift Stay was filed and then only to request "an extension of time ... to prepare and file a more detailed opposition to the ILECs' Petition."[15] Put simply, the petitioning ILECs argued that T-Mobile did not have counsel file an appearance in this matter until a responsive pleading would have been 8 days past due pursuant to the APSC's *Rules of Practice*.[16]

In addition to being untimely, the petitioning ILECs further asserted that T-Mobile's response inappropriately sought to collaterally attack the settled findings set forth in the Commission's Declaratory Order. The ILECs pointed out that the Declaratory Order was widely disseminated and discussed in the wireless industry and was indeed cited by T-Mobile in filings at the FCC immediately after its issuance. Despite T-Mobile's familiarity with the requirements of the Commission's Declaratory Order, the petitioning ILECs pointed out that T-Mobile

---

[14] *Id.*
[15] ILEC Response at p. 2.
[16] *Id., citing* Rule 11(A) of the Commission's *Rules of Practice*.

DOCKET 28988 - #8

nonetheless moved to a meet point billing arrangement with BellSouth in July 2004 without notifying the subtending rural ILECs.[17]

The petitioning ILECs further disputed T-Mobile's claim that it had unsuccessfully sought information regarding the ILECs' minute of use and that the ILECs had refused to report that data. The petitioning ILECs represented that they had previously provided T-Mobile with historic minute of use information as part of their unsuccessful effort to implement the same settlement adopted by other wireless carriers in response to the Commission's Declaratory Order. The petitioning ILECs asserted that if T-Mobile truly had a willingness to compensate the ILECs for the historical CMRS traffic at issue, T-Mobile would not be seeking to set aside the Commission's Order requiring such compensation.[18]

The petitioning ILECs further asserted that T-Mobile's claim that the Commission should reverse the prior decision set forth in its Declaratory Order because of changed circumstances resulting from the FCC's February 24, 2005 order establishing new rules and regulations regarding compensation for indirect CMRS traffic was clearly in error. The petitioning ILECs pointed out that their Motion to Lift Stay merely sought application of their tariffed rates to T-Mobile's indirect IntraMTA mobile-to-land traffic only for the period through April 29, 2005, the day prior to the April 30, 2005 effective date of the FCC's revised rules. The petitioning ILECs represented that T-Mobile was fully aware that if the Commission reversed its previous decision in that regard, the ILECs would have no means of being compensated for the historic traffic at issue.[19]

In conclusion, the petitioning ILECs asserted that the FCC had in fact upheld the ruling entered by the Commission in its Declaratory Order through April 29, 2005. The ILECs thus

---

[17] *Id.* at p. 3.
[18] *Id.* at p. 4.

DOCKET 28988 - #9

argued that they should not be required to incur additional delay and costs in implementing the Commission's Declaratory Order for a carrier that chose to enter into a meet point billing agreement with BellSouth without having the required arrangements in place with other ILECs.[20] The petitioning ILECs thus asserted that T-Mobile's Motion was due to be denied.[21]

On December 1, 2005, T-Mobile filed a Reply to the petitioning ILECs' Response. T-Mobile reasserted therein that it stood ready to address the historic CMRS traffic at issue with the petitioning ILECs.[22] T-Mobile also reiterated its argument that the petitioning ILECs' Motion to Lift Stay should not have been granted by the Commission because said Motion was both unnecessary and legally unfounded. T-Mobile thus urged the Commission to set aside its November 1, 2005, vote to grant that Stay, or in the alternative, to issue an order requiring the petitioning ILECs to provide T-Mobile with the minute of use information and invoices necessary to enable T-Mobile to validate and determine what amount each ILEC is entitled to for the historical CMRS traffic at issue.

## II.    FINDINGS AND CONCLUSIONS

Our assessment of the matters at issue in this cause necessarily begin with a thorough review of the February 24, 2005 FCC order cited by the parties. At the outset, we note that the FCC order in question was entered in response to the petition of a coalition of wireless carriers that included T-Mobile for a finding that state wireless termination tariffs filed by local exchange carriers were illegal. In denying that petition, the FCC held that its then existing rules did not "explicitly preclude tariffed compensation arrangements" and that CMRS providers "were obligated to accept the terms of applicable state tariffs" with respect to indirect IntraMTA traffic

---

[19] *Id.*
[20] *Id.* at pp. 4-5.
[21] *Id.*
[22] T-Mobile Reply at p.1.

DOCKET 28988 - #10

such as that at issue in this proceeding.[23] Although the FCC did amend its rules to prohibit the future applicability of such tariffs in favor of agreements negotiated pursuant to the provisions of the Telecommunications Act of 1996, the FCC clearly upheld the validity and enforceability of state tariffs governing indirect IntraMTA traffic up until the April 30, 2005 effective date of its newly revised rules requiring negotiated agreements regarding the traffic in question. The FCC deemed such negotiated agreements to be more consistent with the pro-competitive process and policies of the Telecommunications Act of 1996.[24]

In order to facilitate the transition to negotiated agreements for the traffic at issue, the FCC adopted rules compelling wireless providers to, upon request, negotiate interconnection agreements with ILECs in good faith and submit to arbitration by state commissions as required by §252 of the Telecommunications Act of 1996.[25] The FCC deemed the new rule necessary because it determined that ILECs had experienced difficulty collecting compensation from wireless providers due to the fact that ILECs could not compel CMRS providers to negotiate interconnection agreements or submit to arbitration under §252 of the Telecommunications Act of 1996 absent such a rule.[26]

We find that the foregoing conclusions of the FCC only strengthen our previous vote to grant the petitioning ILECs' Motion to Lift Stay. The petitioning ILECs' Motion is predicated on the conclusions reached by the Commission in our January 26, 2004 Declaratory Order as well as our Further Order of July 30, 2004. The FCC's order strongly affirms the findings and conclusions we reached in those Orders as well as the rationale relied upon in rendering the determinations set forth therein. As the petitioning ILECs' Motion to Lift Stay only seeks to

---

[23] FCC Order *at* ¶9.
[24] *Id.* at ¶14.
[25] *Id.* at ¶16.
[26] *Id.* at ¶15.

‑dress compensation for historical CMRS traffic that was terminated up to the April 30, 2005 effective date of the FCC's new rules, we find a grant of said Motion to be entirely appropriate and consistent with the order of the FCC. We accordingly reject T-Mobile's argument that a grant of the petitioning ILECs' Motion and the ensuing enforcement of the applicable state tariff provisions of the petitioning ILECs to the historical CMRS traffic at issue without following the negotiation and/or arbitration process required by the Telecommunications Act of 1996 would be contrary to federal law.

The practical result of our decision herein is that T-Mobile must compensate the petitioning ILECs in accordance with the applicable tariff provisions for all T-Mobile indirect, intraMTA mobile-to-land traffic terminated by the ILECs from the date of T-Mobile's meet point billing conversion with BellSouth through April 29, 2005. In order to facilitate such payment, the petitioning ILECs shall submit to T-Mobile all minute of use and other billing information that is necessary for T-Mobile to calculate the amounts it is responsible for as soon as practicable. T-Mobile shall submit the amounts due the petitioning ILECs as soon as practicable after receiving the information necessary to calculate the amount of the payments in question.

With respect to T-Mobile's indirect, IntraMTA mobile-to-land traffic terminated by the ILECs from April 30, 2005 forward, the parties are encouraged to reach negotiated settlements and/or interconnection agreements as envisioned by the FCC. The parties may seek mediation and/or arbitration before the Commission in the event that those efforts are unsuccessful.

Based on the reasoning set forth above, we conclude that our foregoing findings and conclusions are consistent with prevailing law. We further conclude that the public convenience and necessity will be served by the entry of this order.

DOCKET 28988 - #12

IT IS SO ORDERED BY THE COMMISSION.

IT IS FURTHER ORDERED BY THE COMMISSION, That jurisdiction in this cause is hereby retained for the issuance of any further order or orders as may appear to be just and reasonable in the premise.

IT IS FURTHER ORDERED BY THE COMMISSION, That jurisdiction in this cause is hereby retained for the issuance of any further order or orders as may appear to be just and reasonable in the premises.

IT IS FURTHER ORDERED, That this Order shall be effective as of the date hereof.

DONE at Montgomery, Alabama, this 24th day of February, 2006.

ALABAMA PUBLIC SERVICE COMMISSION

*Jim Sullivan*
Jim Sullivan, President

*Jan Cook*
Jan Cook, Commissioner

*George C. Wallace, Jr.*
George C. Wallace, Jr., Commissioner

ATTEST: A True Copy

*Walter L. Thomas, Jr.*
Walter L. Thomas, Jr., Secretary